# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVE SECOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. _____ |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| TELENAV, INC., DOUGLAS MILLER, H.P. JIN, SAMUEL CHEN, WES CUMMINS, and RANDY L. ORTIZ, | ) ) ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on November 3, 2020 (the "Proposed Transaction"), pursuant to which Telenav, Inc. ("Telenav" or the "Company") will be acquired by V99, Inc. ("Parent") and Viking Merger Sub, Inc. ("Merger Sub," and together with Parent, "V99"). V99 is led by H.P. Jin ("Jin"), Co-Founder, President, Chief Executive Officer ("CEO"), and a director of Telenav.

2. On November 2, 2020, Telenav's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with V99. Pursuant to the terms of the Merger Agreement, Telenav's stockholders will receive $4.80 in cash for each share of Telenav common stock they own.

3. On December 18, 2020, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Telenav common stock.

9. Defendant Telenav is a Delaware corporation and a party to the Merger Agreement. Telenav's common stock is traded on the NASDAQ, which is headquartered in New York, New York, under the ticker symbol "TNAV."

10. Defendant Douglas Miller ("Miller") is a director of the Company. Miller is a member of the special committee of the Board (the "Special Committee").

11. Defendant Jin is Co-founder, President, CEO, and a director of the Company. Jin is also Co-Founder, President, CEO, and Chair of the board of directors of Parent.

12. Defendant Samuel Chen ("Chen") is a director of the Company. Chen and his affiliates are providing debt financing in connection with the Proposed Transaction.

13. Defendant Wes Cummins ("Cummins") is a director of the Company. Cummins is a member of the Special Committee.

14. Defendant Randy L. Ortiz ("Ortiz") is a director of the Company. Ortiz is a member of the Special Committee.

15. The defendants identified in paragraphs 10 through 14 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

16. Telenav is a leading provider of connected car and location-based services. The Company enables its customers to deliver custom connected car and mobile experiences.

17. On November 2, 2020, Telenav's Board caused the Company to enter into the Merger Agreement.

18. Pursuant to the terms of the Merger Agreement, Telenav's stockholders will receive $4.80 in cash for each share of Telenav common stock they own.

19. According to the press release announcing the Proposed Transaction:

Telenav, Inc. (NASDAQ: TNAV), a leading provider of connected-car and location-based services, today announced that it has entered into a definitive merger agreement to be acquired by V99, Inc., a Delaware corporation led by HP Jin, Co-Founder, President, and Chief Executive Officer of Telenav, for $4.80 per share in

an all cash transaction that values Telenav at approximately $241 million. HP Jin, Samuel T. Chen, a director of Telenav, and a certain entity affiliated with Mr. Chen, are expected to provide debt financing in connection with the proposed transaction.

The per share purchase price represents a premium of approximately 33.3 percent over Telenav's closing stock price on October 1, 2020, the last full trading day prior to announcing that the Special Committee had received a non-binding "go-private" proposal from V99. Upon completion of the transaction, Telenav will become a private company with the flexibility to continue investing in its connected-car strategy. . . .

Transaction Details

Acting upon unanimous recommendation by the Special Committee, the Telenav Board of Directors unanimously approved the merger agreement and the merger, with Messrs. Jin and Chen recusing themselves from all related discussions and abstaining from the vote. The Special Committee negotiated the terms of the merger agreement with assistance from its independent financial and legal advisors.

The agreement includes a 30-day "go-shop" period expiring on December 2, 2020, which permits the Special Committee and its advisors to solicit alternative acquisition proposals from third parties. The Special Committee will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" will result in a superior proposal, and Telenav does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or otherwise required.

Additionally, Messrs. Jin and Chen, Changbin Wang, and each of their affiliates and related parties, have executed a voting and support agreement with the Company, pursuant to which, among other things, such parties have agreed to vote their shares of Telenav stock in accordance with the recommendation of the Special Committee or the Telenav Board of Directors with respect to the merger agreement and the merger and to otherwise support any proposal that the Special Committee or the Telenav Board of Directors receives prior to the expiration of the "go-shop" period, and determines is a superior proposal and provides an appropriate notice to V99 on or prior to December 16, 2020, including by voting or tendering their shares of Telenav stock in accordance with the recommendation of the Special Committee or the Telenav Board of Directors, as applicable, with respect to such superior proposal.

The transaction is expected to close during the first calendar quarter of 2021, subject to customary closing conditions, including approval by Telenav stockholders, approval by Telenav stockholders holding a majority of the outstanding shares owned by stockholders other than Mr. Jin, Mr. Chen, Changbin Wang, and each of their affiliates and related parties, and receipt of regulatory

approvals. Upon closing of the transaction, Telenav common stock will no longer be listed on any public market. Telenav will continue to be headquartered in Santa Clara, California. . . .

Advisors

B. Riley Securities, Inc. and Wilson Sonsini Goodrich & Rosati, P.C. are serving as financial advisor and legal advisor, respectively, to the Telenav Special Committee. Norton Rose Fulbright LLP is serving as legal advisor to V99, Inc.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

20. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

21. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

22. First, the Proxy Statement omits material information regarding the Company's financial projections.

23. With respect to the "Extension Projections," the Proxy Statement fails to disclose: (i) all line items used to calculate adjusted EBITDA; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

24. With respect to the "No Extension Projections," the Proxy Statement fails to disclose: (i) all line items used to calculate adjusted EBITDA; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

25. The Proxy Statement fails to disclose the "Maintenance Projections" and the underlying assumptions.

26. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows

5

stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

27.     Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, B. Riley Securities, Inc. ("B. Riley").

28.     With respect to B. Riley's Selected Companies Analysis, the Proxy Statement fails to disclose: (i) B. Riley's basis for applying a selected multiple range of 7.0x to 9.0x; and (ii) the results of B. Riley's analysis of the estimated tax savings attributable to Telenav's net operating losses ("NOLs").

29.     With respect to B. Riley's Selected Transactions Analysis, the Proxy Statement fails to disclose: (i) B. Riley's basis for applying a selected multiple range of 6.0x to 8.0x; and (ii) the results of B. Riley's analysis of the estimated tax savings attributable to Telenav's NOLs.

30.     With respect to B. Riley's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) Telenav management's estimates of the impact of Telenav's NOLs; (ii) B. Riley's basis for applying the ranges of terminal value multiples used in the analysis; (iii) the individual inputs and assumptions underlying the discount rates ranging from 15.5% to 20.5%; and (iv) the projected free cash flows used in the analysis and all underlying line items.

31.     With respect to B. Riley's Premiums Paid Analysis, the Proxy Statement fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums paid in the transactions.

32.     With respect to B. Riley's NOL Analysis, the Proxy Statement fails to disclose the individual inputs and assumptions underlying the discount rates ranging from 16.5% to 19.5%.

33.     The Proxy Statement fails to disclose B. Riley's October 15, 2020 financial analyses.

34. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

35. Third, the Proxy Statement omits material information regarding the process leading up to the execution of the Merger Agreement.

36. The Proxy Statement fails to disclose the nature of the Special Committee's discussion with Telenav's Chief Financial Officer, Adeel Manzoor, on September 24, 2020 regarding "the need to update Telenav's long-term financial forecast," and its similar discussion held on October 1, 2020.

37. The Proxy Statement fails to disclose whether the Company entered into any nondisclosure agreements that contained "don't ask, don't waive" provisions.

38. The Proxy Statement fails to disclose the reasons Ken Xie ("Xie") resigned from the Board on November 2, 2020 effective immediately, which was the day the parties executed the Merger Agreement.

39. The Company's stockholders are entitled to an accurate description of the process leading up to the Proposed Transaction.

40. Fourth, the Proxy Statement omits material information regarding B. Riley.

41. The Proxy Statement fails to disclose whether B. Riley will be paid the "additional fee" in connection with its engagement and the amount of such fee.

42. The Proxy Statement fails to disclose the timing and nature of the past services B. Riley provided to the Company and its affiliates, as well as the amount of compensation B. Riley received for providing such services.

43. The Proxy Statement fails to disclose whether B. Riley has provided past services to V99 or its affiliates.

44. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

45. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

46. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Telenav

47. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

48. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Telenav is liable as the issuer of these statements.

49. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

50. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

51. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

52. The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

53. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

54. Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

55. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

56. The Individual Defendants acted as controlling persons of Telenav within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Telenav and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

57. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after

these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

58.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

59.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

60.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or

necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: January 5, 2021                **RIGRODSKY & LONG, P.A.**

By: */s/ Timothy J. MacFall*
Seth D. Rigrodsky
Timothy J. MacFall
Gina M. Serra
Vincent A. Licata
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Email: sdr@rl-legal.com
Email: tjm@rl-legal.com
Email: gms@rl-legal.com
Email: vl@rl-legal.com

*Attorneys for Plaintiff*